UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL ORTOLIVO,<br><br>    Plaintiff,<br><br>v.<br><br>PRECISION DYNAMICS INTERNATIONAL, LLC, *et al.,*<br><br>    Defendants. | Case No. 22-cv-01812-JSW<br><br>**ORDER RESOLVING MOTIONS FOR SUMMARY JUDGMENT AND SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 46, 47 |

Now before the Court for consideration are: (1) the motion for partial summary judgment filed by Precision Dynamics International, LLC ("PDI"); and (2) the motion for partial summary judgment filed by Plaintiff Daniel Ortolivo ("Ortolivo").[1] The Court has considered the parties' papers, including the joint supplemental brief ordered by the Court, relevant legal authority, and the record in this case.[2] For the reasons that follow, the Court HEREBY GRANTS PDI's motion and DENIES Ortolivo's motion.

**BACKGROUND**

The following facts are undisputed, unless otherwise noted. Ortolivo is the sole owner and sole employee of American Automotive Financial Services, Inc. ("AAFS"), which he founded in 2006. AAFS "contracts with consulting and training companies to provide training to automotive

---

[1] Ortolivo also sued Kevin Long, who is PDI's President and Chief Operating Officer. The Court granted Long's motion to dismiss for lack of jurisdiction, with leave to amend. Ortolivo did not amend his claims against Long.

[2] Ortolivo included objections to PDI's evidence with his reply. (Dkt. No. 52, Ortolivo Reply Br. at 10:20-13:24.) The Court addresses those objections as necessary in the analysis. It has not addressed objections to evidence on which it did not rely.

manufacturers and dealerships." (Dkt. No. 50-1, Declaration of Matthew Costello in Opposition to Plaintiff's MSJ ("Costello Opp. Decl."), ¶¶ 2, 2a, 2g, 2h, Ex. A (Deposition of Daniel Ortolivo ("Ortolivo Depo.") at 39:11-40:5, 40:9-11, 40:21-42:2, 43:15-20), Ex. A-1 (AAFS Statement of Incorporation), Exs. A-7 & A-8 (Ortolivo Resumes).)[3]

It is undisputed that Nissan North America contracted with PDI to provide training to dealerships regarding automotive product knowledge, presentation, and sales processes (the "NBEST Program"). Between August 2008 and March 2021, Ortolivo acted as a Facilitator for the NBEST Program.[4] (Dkt. No. 47-2, Declaration of Kevin Long in Support of PDI's MSJ ("Long Supp. Decl."), ¶ 3; Dkt. No. 46-2, Declaration of Nicholas W. Sarris in Support of Plaintiff's MSJ ("Sarris Supp. Decl."), ¶ 5, Ex. B (Ortolivo Depo. at 18:16-18, 99:6-9); Costello Opp. Decl., ¶ 8, Ex. B (Deposition of Kevin Long ("Long Depo.") at 11:14-16, 60:7-11).)

In 2020, Nissan notified PDI that PDI would need to cut the NBEST Program's budget for fiscal year 2020 (April 1, 2020 through March 31, 2021), and it suggested PDI reduce the number of facilitators. (Dkt. No. 47-1, Declaration of Matthew Costello in Support of PDI's MSJ ("Costello Supp. Decl."), ¶¶ 3-4, Ex. B (Long Depo. at 11:20-25, 93:4-97:15), Ex. C (Deposition of Wayne Baetz ("Baetz Depo.") at 30:25-31:21, 50:8-10); Long Supp. Decl. ¶¶ 5-6, Ex. A.) PDI reduced the number of its Facilitators from 20 to 19. At the same time, PDI hired Wayne Baetz, who had PDI's Texas market, as a Training Manager for the NBEST Program.

PDI offered Ortolivo the Texas market but Ortolivo declined the offer. (Costello Supp. Decl., Ex. A (Ortolivo Depo. at 223:12-15), Ex. C (Baetz Depo. at 9:24-10:1, 41:12-15).) After Ortolivo declined the offer, PDI utilized Kevin Minne to cover the Texas market for fiscal year

---

[3]  Ortolivo objects to PDI Exhibit A-1 on the basis that PDI did not properly authenticate it. The Court OVERRULES the objection because the document is a public record. As such, the Court can take judicial notice of its existence. *See, e.g., Motul S.A. v. USA Wholesale Lubricant, Inc.*, No. 22-cv-4841-JSW, -- F. Supp. 3d --, 2023 WL 5061945 at *4 (N.D. Cal. Aug. 8, 2023) (taking judicial notice of filings with the California Secretary of State because they are public records)). Ortolivo also admitted that Exhibit A-1 accurately reflected AAFS's corporate information. (Costello Opp. Decl., Ex. A (Ortolivo Depo. at 41:23-42:4).)

[4]  PDI argues that it engaged Ortolivo's company AAFS. For ease of reference only, the Court generally refers to Ortolivo throughout this Order when discussing the facts of the parties' relationship.

2020. (Dkt. No. 47-4, Declaration of Kevin Minne, ¶ 3.) As a result, PDI did not have to terminate any Facilitators that fiscal year.

In fiscal year 2021, PDI was faced with the same budget limits and wanted to find a permanent Facilitator for the Texas market. PDI ultimately engaged Ashley Carey for that market and decided to use Minne to cover Ortolivo's market. According to PDI, it decided not to re-engage Ortolivo because: (1) there were a dwindling number of dealerships in Northern California; and (2) there were concerns about Ortolivo's treatment of PDI's staff and fellow Facilitators. (Costello Supp. Decl., Ex. B (Long Depo. at 93:4-98:19), Ex. C (Baetz Depo. at 30:25-31:21, 49:13-50:10, 50:14-51:7, 53:24-54:3, 89:24-104:4 and Baetz Depo., Ex. 3); Long Supp. Decl., ¶ 6; Dkt. No. 47-3, Declaration of Wayne Baetz in Support of PDI's MSJ ("Baetz Supp. Decl."), ¶¶ 5-6.) It is undisputed that when PDI ended its relationship Ortolivo, he was 65, Minne was 64, and Carey was 41.

Ortolivo contends that PDI misclassified him as an independent contractor. Based on the theory that he was an employee, Ortolivo brings claims for alleged violations of California's Labor Code and "and applicable Wage Order(s)." (Compl. ¶ 16.) PDI, in turn, contends that Ortolivo was exempt from the relevant provisions of the Labor Code because he was an independent contractor. In the alternative, it contends that the parties were engaged in a bona fide business to business relationship under Labor Code section 2776 (the "B2B exemption"). (*See* Dkt. No. 2-2, PDI Answer, Affirmative Defenses 1-3, 44-45, 47-49.) Ortolivo moves for summary adjudication of the issue of his status and whether the B2B exemption applies, which would preclude PDI from prevailing on many of its affirmative defenses.

Ortolivo also contends that PDI terminated him because of his age and brings claims for violations of California's Fair Housing and Employment Act ("FEHA") and for wrongful termination in violation of public policy. PDI moves for partial summary judgment on those claims.

The Court will address additional facts as necessary in the analysis.

//

//

# ANALYSIS

## A. Applicable Legal Standard

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court may not weigh evidence or make determinations of credibility. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson*, 477 U.S. at 248. A fact is "material" if it may affect the outcome of the case. *Id.* If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, the party must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets its initial burden, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). It is not a court's task "to scour the record in search of a genuine issue of triable fact." *Id.* (quoting *Richard*, 55 F.3d at 251); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.") "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment;

rather, the non-moving party must introduce some significant probative evidence tending to support the complaint." *Summers v. A. Teichert Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.  The Court Denies Ortolivo's Motion for Summary Judgment.**

**1.  Employee v. Independent Contractor Status.**

California has adopted several multi-factor tests to determine whether a worker is an employee or an independent contractor, and the parties disagree about which test the Court should apply. Ortolivo argues the Court should use the "ABC test," which is derived from *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903 (2018). Under that test, a worker is presumed to be an employee unless the hiring entity can establish each of the following factors:

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact, (B) that the worker performs work that is outside the usual course of the hiring entity's business, and (C) that the worker is customarily engaged in an independently established trade, occupation, or business[.]

*Id.* at 964. If a hiring entity fails to establish any one of these factors, the worker will be considered an employee. *Id.* Until January 1, 2020, the ABC test only applied to claims arising out of one of the Wage Orders promulgated by California's Industrial Welfare Commission.[5] *See*

---

[5]  The Court ordered the parties to file a supplemental brief regarding whether there is an applicable Wage Order, whether Ortolivo should be permitted to pursue claims based on a Wage Orders, and whether, if the ABC test is applicable, the Court should limit its application to determining the nature of the parties' relationship after January 1, 2020. In light of its ruling on Ortolivo's motion, the Court does not address the last question.

The parties agree that the relevant Wage Order would be Wage Order No. 4-2001, if Ortolivo is found to be an employee rather than an independent contractor. (Dkt. No. 60, Joint Supplemental Brief at 4:18-20, 5:23-25.) Although Ortolivo did not include a specific reference to that Wage Order in his Complaint, the most relevant Wage Orders define the term "employ" in the same way. *See, e.g., Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 946 n.26 (9th Cir. 2019), *disapproved of on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). PDI has not demonstrated any prejudice from Ortolivo's failure to specify a particular Wage Order, and the Court shall not preclude him from relying on Wage Order 4-2001.

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 10 Cal. 5th 944, 948 (2021).  As of January 1, 2020, the ABC test applies to claims based on violations of the Labor Code.  *See* Cal. Lab. Code § 2775(b).[6]

PDI argues that the ABC test does not apply because of the B2B exemption.  That exemption provides that the test set forth in *S.G. Borello & Sons v. Department of Industrial Relations*[7] applies "[i]f an individual acting as a sole proprietor, or a business entity formed as a … corporation ("business service provider") contracts to provide services to another such business … ("contracting business"), the determination of employee or independent contractor status of the business services provider shall be governed by" and the contracting business satisfies twelve statutory criteria.  *Id.* § 2776(a).[8]

Under *Borello*, "the principal test of an employment relationship is whether the person to whom services is rendered has the right to control the manner and means of accomplishing the result desired."  48 Cal. 3d at 350 (cleaned up).  The *Borello* court recognized that the right to control, "applied rigidly and in isolation, is often of little use in evaluating the infinite variety of service arrangements."  *Id.*  In addition to control, the *Borello* test examines whether the putative employer has the right to discharge a worker at will and without cause and other factors the Court will address in the analysis.  *Id.* at 350-51.

**2.    There Are Genuine Issues of Fact in Dispute on the B2B Exemption.**[9]

In order for PDI to demonstrate the B2B exemption applies, it must satisfy the following criteria:

> (1) The business service provider is free from the control and direction of the contracting business entity in connection with the

---

[6]   Section 2775 has not been applied retroactively.  *See, e.g., Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 472 n.11 (9th Cir. 2023); *Lawson v. Grubhub, Inc.*, 13 F.4th 908, 912 (9th Cir. 2021) (citing Cal. Lab. Code § 2785(c)).

[7]   48 Cal. 3d 341 (1989).

[8]   In contrast to Section 2775, those exemptions do apply retroactively.  *Id.* § 2785(b).

[9]   Two conditions, which pertain to licensing requirements, are not applicable in this case. *See* Cal. Lab. Code §§ 2776(a)(4), (12).

6

performance of the work, both under the contract for the performance of the work and in fact

(2) The business service provider is providing services directly to the contracting business rather than to customers of the contracting business. This subparagraph does not apply if the business service provider's employees are solely performing the services under the contract under the name of the business service provider and the business service provider regularly contracts with other businesses.

(3) The contract with the business service provider is in writing and specifies the payment amount, including any applicable rate of pay, for services to be performed, as well as the due date of payment for such services.

…

(5) The business service provider maintains a business location, which may include the business service provider's residence, that is separate from the business or work location of the contracting business.

(6) The business service provider is customarily engaged in an independently established business of the same nature as that involved in the work performed.

(7) The business service provider can contract with other businesses to provide the same or similar services and maintain a clientele without restrictions from the hiring entity.

(8) The business service provider advertises and holds itself out to the public as available to provide the same or similar services.

(9) Consistent with the nature of the work, the business service provider provides its own tools, vehicles, and equipment to perform the services, not including any proprietary materials that may be necessary to perform the services under the contract.

(10) The business service provider can negotiate its own rates.

(11) Consistent with the nature of the work, the business service provider can set its own hours and location of work.

Cal. Lab. Code 2776(a).

      **a.**     **Right to Control.**

The first requirement under the B2B exemption examines the right to control. Where a hiring entity controls the "means by which work is accomplished," courts have found an employment relationship exists. If the hiring entity has the right to control the results, courts have

found an independent contractor relationship. *Bowerman*, 60 F.4th at 474. The outcome will depend on how "the fact-finder, or the court on summary judgment, defines 'results.'" *Id.* Under California law, "the right to control results is a 'broad' one, encompassing 'the right to inspect, the right to make suggestions or recommendations as to details of the work, [and] the right to prescribe alterations or deviations in the work,' none of which 'chang[e] the relationship from that of owner and independent contractor." *Id.* at 475 (quoting *Beaumont-Jacques v. Farmers Grp., Inc.*, 217 Cal. App. 4th 1138, 1143 (2013)).[10]

        The parties' descriptions of the purpose of the NBEST Program are not materially different. The NBEST Agreement states that PDI engaged Ortolivo to provide training to Nissan sales representatives, which included "sales-training facilitation, consumer training events, technical instruction relating to automotive products, logistical support, professional driving and other related services." (Costello Opp. Decl., Ex. A-2 (2017-2018 NBEST Agreement, Ex. 1).) Ortolivo argues the purpose of the NBEST Program was "to teach the dealership personnel specific information regarding new vehicles or new vehicle features[.]" (Ortolivo MSJ at 1:14-16.) The Court concludes that, in the context of training, the desired results would be to successfully convey the substance of the materials in a professional manner. The NBEST Agreements are silent on how a Facilitator is to perform their role.

        Ortolivo relies on *Alexander v. FedEx Ground Packaging Systems, Inc.*, to support his arguments on the issue of control. 765 F.3d 981 (9th Cir. 2014). In that case, FedEx drivers argued they were misclassified as independent contractors, and the Ninth Circuit agreed. It relied, in part, FedEx's operating agreement ("OA") with its drivers. *See* 765 F.3d at 984-987 (discussing contents of operating agreement). The court concluded that "[t]he OA and FedEx's policies and procedures unambiguously allow FedEx to exercise a great deal of control over the manner in which its drivers do their jobs," which weighed in favor of finding employee status. *Id.*

---

[10] The first factor of the ABC test and the B2B exemption are identical. In addition, the analysis on this factor is not materially different to the analysis of control under the *Borello* test. *See Bowerman*, 60 F.4th at 477 (concluding that summary judgment on first factor of ABC test would be inappropriate where court found there were genuine disputes on the issue of control under the *Borello* test).

at 989.

Here, there is evidence that PDI has a "contractors reference guide," which Long testified "serves as a standard to [PDI's] policies and procedures in order to enhance understanding to help ensure consistency throughout the organization" (Costello Opp. Decl., Ex. B (Long Depo. at 21:23-22:7).) According to other testimony, PDI's reference guide contains a section regarding a chain of communication, which requires Facilitators to communicate with PDI supervisors or managers rather than with the client. (Sarris Supp. Decl., Ex. B (Long Depo. at 23:11-16), Ex. C (Baetz Depo. at 12:19-13:14).)

The reference guide also contains information relating to a Facilitator's attire and appearance during training. In *Alexander*, the evidence demonstrated that FedEx required drivers to wear a FedEx uniform. 765 F.3d at 987. It also "control[ed] … drivers' clothing from their hats down to their shoes and socks." *Id.* at 989. The court concluded that in the context of "package delivery services … results, reasonably understood … referred … to the timely and professional delivery of packages." *Id.* at 990. In light of that definition of results, the court reasoned that "no reasonable jury could find that the 'results' sought be FedEx includes detailed specifications as to the delivery driver's fashion choices and grooming." *Id.*

The record here demonstrates that although PDI provides Facilitators with shirts, for example, they are not branded with PDI's logo. Instead, they are branded with Nissan's logo. Baetz also testified that while PDI "hoped" the Facilitators would wear nametags, it did not expect them to do so. (Sarris Supp. Decl., Ex. B (Long Depo. 26:12-14), Ex. C (Baetz Depo. at 69:24-70:23).) Based on the record before the Court, a reasonable jury could conclude that PDI does not dictate "every exquisite detail" of the Facilitators' appearances. *Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093, 1102 (9th Cir. 2014) (where defendant did dictate such detail about appearance, that fact favored finding employee status). In addition, Ortolivo has not submitted PDI's reference guide, and the Court cannot assess whether its contents and requirements are analogous to the Operating Agreement at issue in *Alexander*.

PDI also provides Facilitators with a Facilitator guide and a participant workbook for each training session. Baetz testified that PDI allows Facilitators to "convey the information" in the

9

guide "in the matter the facilitator sees fit." (*See* Costello Opp. Decl., Ex. C (Baetz Depo. at 26:8-29:21.) Baetz also testified that PDI did not track the hours Facilitators worked and that Facilitators booked their own travel. (Sarris Supp. Decl., Ex. C (Baetz Depo. at 58:1-8, 73:6-17).) Viewed in the light most favorable to PDI, record here could lead a reasonable jury to conclude that PDI exercises control over the *results* rather than the *means* by which Facilitators do their work.

The Court concludes PDI has met its burden to show there are genuine issues of fact in dispute on the issue of control on the B2B exemption. As a result, PDI also has met its burden to show there are genuine issues of fact in dispute on the issue of control under either the ABC test or under the *Borello* test.

    **b.**  **Providing services directly to the contracting business.**

PDI also will be required to show Ortolivo provided services "directly" to PDI rather than to PDI's customers. It is undisputed that Nissan was PDI's customer. Ortolivo argues that he provided services "directly" to Nissan. However, the contracts between Ortolivo and PDI show PDI engaged AAFS for the purpose of providing training to Nissan and that PDI paid AAFS. (Costello Opp. Decl. Ex. A (Ortolivo Depo. at 45:10-46:14).) The Court cannot say as a matter of law that it would be impossible for PDI to satisfy this requirement. *Cf. People v. Sup. Ct.*, 57 Cal. App. 5th 619, 634 (2020) (concluding it would not be impossible for hiring entity could contract directly with business service providers, "direct their actions, and pay them," although the business service provider would be moving freight belonging to hiring entity's customers).

    **c.**  **Existence of written contract and negotiating rates.**

PDI must show the parties had a written contract, that specifies the payment amount, applicable rate of pay, and the due date for payment. PDI also must show that AAFS and Ortolivo could negotiate their rates. It is undisputed that there are written contracts between PDI and "Ortolivo on behalf of AAFS," that satisfy these requirements. (Costello Opp. Decl., Ex. A (Ortolivo Depo. at 128:7-19, 130:12-17, 139:15-141:20, 142:18-143:1, 144:15-145:8), Exs. A-2

10

through A-5).)[11]  Ortolivo also testified that on one occasion he asked PDI for a rate increase, which PDI granted. (*Id.*, Ex. A (Ortolivo Depo. at 145:3-22).)

The Court concludes PDI has met its burden to show a reasonable jury could find it satisfied these requirements.

### d. Business location.

PDI must show that Ortolivo maintains a business location. Ortolivo testified that AAFS's business address and his residence address were the same, which is permissible under Section 2776(b)(5). (Costello Opp. Decl. Ex. A (Ortolivo Depo. at 42:18-43:2).) This requirement is undisputed.

### e. Nature of the business.

To satisfy the B2B exemption, PDI also will be required to show that Ortolivo is "customarily engaged in an independently established business of the same nature as that involved in the work performed" and that Ortolivo holds himself "out to the public as available to provide the same or similar services." *Id.* § 2776(a)(6), (8). Ortolivo argues that he did not hold himself out as a "Facilitator," but the Court finds his title is not dispositive. Ortolivo, who is AAFS's sole employee, described AAFS as "[a] sales and management consulting firm specializing in providing consulting, … and sales training for companies in the automotive industry.") (*See, e.g.,* Costello Opp. Decl., Ex. A-7 at 1.) Ortolivo also testified that he incorporated AAFS before the engagement with PDI, and PDI presents evidence that AAFS contracted with another business after the parties' relationship ended. *Cf. Chebotnikov v. LimoLink, Inc.*, No. 14-13475-FDS, 2017 WL 2888713, at *8 (D. Mass. July 6, 2017) (fact that contracting entities existed before and after

---

[11] Ortolivo objects to the NBEST Agreements to the extent PDI relies on them to show he was, in fact, an independent contractor rather than an employee. The Court has not relied on them for the truth of Ortolivo's status.

Ortolivo also objects to PDI exhibit A-2, an NBEST Agreement from 2017, because it is unsigned. Ortolivo testified that he has never seen a fully executed copy of this agreement. The Court OVERRULES Ortolivo's objections. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9thc Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.").

11

relationship with hiring entity supported finding of legitimate business-to-business relationship).[12]

The Court concludes there are genuine issues of fact in dispute about whether or not PDI and Ortolivo were engaged in the same business.

### f. Ability to contract with other businesses.

PDI will be required to show that Ortolivo could "contract with other businesses to provide the same or similar services and maintain a clientele without restrictions from" PDI. Cal. Lab. Code § 2776(a)(7). Long attests that PDI did not prohibit Facilitators from "engaging with other companies while contractually engaged by PDI." (Long Opp. Decl., ¶ 9.) The NBEST Agreements contain restrictions about working with *PDI's* clients. They do not contain language that would preclude Ortolivo from working with other clients, but Ortolivo testified he was told he could not do so. (Costello Opp. Decl., Ex. A (Ortolivo Depo. at 148:14-17, 148:23-25).) The Court concludes PDI has met its burden to show this requirement genuinely is in dispute.

### g. Use of tools and equipment and ability to set hours and location of work.

The ninth and eleventh criteria require PDI to show that "consistent with the nature of the work," Ortolivo provided his own tools and could set his own hours and location of work. It is undisputed neither Ortolivo nor PDI created the materials used during the training sessions. Instead, Ortolivo was provided with proprietary training materials created by Nissan. (Costello Opp. Decl., Ex. A (Ortolivo Depo. at 176:4-8), Ex. B (Long Depo. at 34:6-38:10), Ex. C (Baetz Depo. 76:25-79:5).) It also is undisputed that training sessions were held at Nissan dealerships.

Ortolivo had the option to use a Nissan branded vehicle to travel to and from training sessions and could borrow equipment from PDI, but there is nothing in the record to suggest that PDI required Facilitators to use PDI's equipment. (Costello Opp. Decl., Ex. B (Long Depo. at 68:24-69:5, 71:17-72:10, 86:22-87:8), Ex. C (Baetz Depo. at 54:15-57:2, 73:6-74:3, 76:1-9).) There also is sufficient evidence in the record from which a jury could conclude that PDI did not

---

[12] Because the California Supreme Court adopted a version of the ABC test that tracks Massachusetts' version of the test, case law interpreting Massachusetts law is persuasive. *See Dynamex,* 4 Cal. 5th at 956 n.23.

completely dictate Ortolivo's schedule. (*See* Costello Opp. Decl., Ex. C (Baetz Depo. at 15:13-16:10).) The Court concludes that PDI has met it burden to show there are genuine disputes of fact on whether it can satisfy these criteria.

Accordingly, the Court concludes PDI has met its burden to show there are genuine disputes of fact regarding the applicability of the B2B exemption. Therefore, it has shown there are genuine issues of fact in dispute about whether the *Borello* test or the ABC test should apply to determine Ortolivo's status. Because many of the criteria for the B2B exemption overlap with the factors required to establish the *Borello* test or the ABC test, the Court also concludes PDI has met its burden to show there are disputes about whether it properly classified Ortolivo as an independent contractor.

Accordingly, the Court DENIES Ortolivo's motion.

**C.     The Court Grants PDI's Motion for Partial Summary Judgment.**

PDI moves for summary judgment on Ortolivo's FEHA and wrongful termination claims.[13] The parties agree that Ortolivo's claims for failure to prevent discrimination and wrongful termination are derivative of his age discrimination claims. *See, e.g., Arteaga v. Brinks, Inc.,* 163 Cal. App. 4th 327, 355 (2008). If PDI shows it is entitled to summary judgment on the age discrimination claim, it will be entitled to summary judgment on those claims as well. For the reasons the follow, the Court concludes PDI has met its burden.

California has adopted the three-stage burden-shifting test set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) for trying claims of discrimination. *See Guz v. Bechtel Nat'l, Inc.,* 24 Cal. 4th 317, 354 (2000). Under the *McDonnell Douglas* framework, a plaintiff carries the initial burden to establish a prima facie case that creates an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff establishes a prima facie case, "a presumption of discrimination arises." *Guz*, 24 Cal. 4th at 355; *McDonnell Douglas*, 411 U.S. at 802. If, however, "the prima facie case consists of no more than the minimum necessary to create a presumption of discrimination under *McDonnell Douglas*, plaintiff has failed to raise a triable

---

[13]     Although PDI disputes that Ortolivo was an employee, it assumes only for purposes of this motion that he was. The Court makes the same assumption.

13

issue of fact." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment action. *McDonnell Douglas*, 411 U.S. at 802. An employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the … evidence raises a genuine issue of fact as to whether it discriminated against" the employee. *Caldwell v. Paramount Unified Sch. Dist.*, 41 Cal. App. 4th 189, 201 (1995) (quoting *Clark v. Claremont Univ. Ctr.*, 6 Cal. App. 4th 639, 663-64 (1992)). If the employer does so, the burden shifts back to the employee to prove that the employer's explanation is a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 802.

To set forth a prima facie case of age discrimination under FEHA, Ortolivo must establish that: (1) he was at least forty years old; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) he was "either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207-08 (9th Cir. 2008).[14] "Very little" is required to satisfy this burden. *See, e.g., Peterson v. Hewlett-Packard, Co.*, 358 F.3d 599, 603 (9th Cir. 2004). The Court assumes for the sake of argument that Ortolivo would be able to establish a prima facie case.

PDI asserts that after it was required to reduce the number of Facilitators due to budget cuts, it did not renew Ortolivo's contract because the Northern California market had fewer dealerships to cover and because of concerns about Ortolivo's behavior. (*See, e.g.,* Costello Supp. Decl., Ex. C-1; Baetz Decl. ¶ 6.) Ortolivo has not put forth evidence to contest the first explanation. He argues the latter explanation is unlikely, but that argument goes to whether this reason is a pretext for discrimination. The Court concludes PDI has met its burden to show it had legitimate, nondiscriminatory reasons for not renewing Ortolivo's contract.

Because PDI put forth legitimate, nondiscriminatory reasons for declining to renew Ortolivo's contract, the *McDonnell-Douglas* framework drops away. *Guz,* 24 Cal. 4th at 356.

---

[14] PDI does not dispute that Ortolivo could establish the first three elements of his prima facie case.

14

PDI argues that Ortolivo cannot prove he was replaced by a substantially younger employee because Minne, who took over his territory, was 64 years old. In the Ninth Circuit, "an age difference of less than ten years [is] presumptively insubstantial." *France v. Johnson*, 795 F.3d 1170, 1174 (9th Cir. 2015). Ortolivo admitted that he had no specific information that PDI did not renew his contract because of his age. (Costello Supp. Decl., Ex. A (Ortolivo Depo. at 220:17-19).) Ortolivo argues that PDI had offered him the Texas market the previous year, which undermines its argument that it had concerns about his behavior. Ortolivo also contends some people, including Baetz, made ageist comments. Yet, he testified that he viewed those comments as "ribbing." (*Id.* at 220:20-221:17.) Ortolivo testified that Baetz made similar comments. Although Baetz testified he recommended that PDI not renew Ortolivo's contract, he did not have decision making authority. Ortolivo has not put forth evidence to show Long knew about these comments. In addition, Baetz made the comments at least a year before PDI decided not to renew Ortolivo's contract. (*Id.* at 221:18-222:25.)

In *Nidds v. Schindler Elevator Corp.*, the plaintiff alleged that his supervisor said that he wanted to "get rid of all the 'old timers'" because they did not "kiss [his] as*." 113 F.3d 912, 919 (9th Cir. 1997). However, the court concluded the comment was not clearly tied to age and could refer to younger employees who did not follow directions and, as a result, was too weak to create an inference of age discrimination. *Id.* at 918-19. The Court finds the record here similarly weak. At best, Ortolivo provides evidence of a few stray remarks about age that lack a temporal connection to the termination of his contract. In addition, the facts here are akin to a reduction in force rather than a situation where Ortolivo was replaced. *See, e.g., Wallis,* 26 F.3d at 891. Looking at the facts in the light most favorable to Ortolivo, the Court concludes he has failed to put forth specific and substantial evidence that PDI terminated him because of his age.

Accordingly, the Court GRANTS PDI's motion for partial summary judgment.

**CONCLUSION**

For the reasons set forth, the Court DENIES Ortolivo's motion for summary judgment and GRANTS PDI's motion for partial summary judgment. The Court ORDERS the parties to appear on January 12, 2024 for a further case management conference.

The parties shall file a joint case management conference statement by January 5, 2024, that addresses whether additional ADR efforts would be useful and proposes pretrial and trial dates.

**IT IS SO ORDERED.**

Dated: November 9, 2023

_____
sJEFFREY S. WHITE
United States District Judge